**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

PATRICIA PARRISH,                              )
                                               )
                    Plaintiff,                 )
                                               )
v.                                             )        Case No. 21-CV-00280-GKF-SH
                                               )
FARMERS INSURANCE COMPANY, INC.,               )
                                               )
                    Defendant.                 )

## OPINION AND ORDER

This matter comes before the court on the Motion for Summary Judgment [Doc. 27] of

defendant Farmers Insurance Company, Inc. (FICO).  For the reasons set forth below, the motion

is granted in part and denied in part.

### I.      Factual Background

The following facts are undisputed for purposes of summary judgment.

FICO issued a homeowners insurance policy, designated policy no. 30868-15-96 (Policy),

for the property located 1420 E. Lincoln Ave., Sapulpa, Oklahoma 74066, to plaintiff Patricia

Parrish.[1]  The Policy was in effect for the periods from June 18, 2018 to June 18, 2019 and June

18, 2020 to June 18, 2021.  [Doc. 27, p. 4, ¶ 1; Doc. 38, p. 8 n.1; Doc. 27-1; Doc. 27-2].  The

Policy included the following provisions:

Section I – Extensions of Coverage

                                      ***

4.      Building Ordinance or Law

---

[1] The Policy's Named Insured is "Patti Parrish."  However, there appears to be no dispute that
"Patti Parrish" is plaintiff Patricia Parrish.

a.   If the Declarations show that Building Ordinance or Law coverage applies, then we will pay for the increased costs that you actually and necessarily incur when you repair, replace, rebuild, demolish or remove, hereinafter "repair", covered damage to the **dwelling** or a **separate structure** because of or resulting from the enforcement of any **building law**.

[Doc. 27, p. 8, ¶ 15; Doc. 38, p. 8 n.1; Doc. 27-1, pp. 19, 22; Doc. 27-2, pp. 19, 22].

Section I – Uninsured Loss or Damage and Excluded Causes of Loss or Damage

**A.   Uninsured Types of Loss or Damage**

We do not insure property covered by this policy, provide Loss of Use coverage or extend coverage in any Extensions of Coverage, for any loss or damage consisting or composed of any of the uninsured types of loss or damage listed below, whether on or off the **residence premises**, however caused, whether the loss or damage occurred immediately or over time, or is the result of, a natural or man-made activity, condition or event, except as may be stated otherwise.  Uninsured types of loss or damage are never covered regardless of whether any acts, omissions or decisions of any persons, group, organization, association or governmental body or any other cause of loss or event contributes concurrently or in any combination or sequence to cause the uninsured type of loss or damage, except as expressly stated otherwise.

Uninsured types of loss or damage can occur in combination with insured loss or damage.  If any uninsured type of loss or damage does occur in combination with or in sequence to insured loss or damage, the uninsured type of loss or damage is not covered.  If the insured loss or damage and uninsured loss or damage cannot be physically segregated from each other for any reason, including by way of example but not limited to what perils caused the loss or damage or the extent or timing of the loss or damage caused by individual perils, then none of the loss or damage will be insured by this policy.

\*\*\*

**7.   Wear and Tear, Deterioration or Mechanical Breakdown**

We do not insure loss or damage which is wear and tear, deterioration or mechanical breakdown, unless if caused by fire or lightning.

9.      **Corrosion, Deterioration, Decay or Rust**

We do not insure loss or damage which consists of, is composed of or which is corrosion, deterioration, decay or rust, unless if by fire or lightning.  This includes, but is not limited to, any decomposition, breakdown and/or decay of manmade or natural material or matter by any agent.

[Doc. 27-1, p. 27; Doc. 27-2, p. 27]

B.      **Excluded Causes of Loss or Damage**

Except as expressly provided elsewhere in this policy, we do not:

a.      insure property covered by this policy;

b.      provide Loss of Use coverage; or

c.      provide coverage in any Extensions of Coverage;

for loss or damage which directly or indirectly is caused by, arises out of, or results from any of the excluded causes of loss or damage listed below, whether the loss or damage occurs on or away from the **residence premises**. Acts or omissions of persons or other causes or other events can cause, contribute to, combine with or aggravate any of the excluded causes of loss or damage to cause loss or damage.  Loss or damage caused by an excluded cause of loss or damage is not covered regardless of any acts, omissions or decisions of any persons, group, organization, association or governmental body or of any other causes or other events which aggravate or contribute concurrently or in any combination or sequence with the excluded cause of loss or damage.

If covered and excluded causes of loss or damage each cause loss or damage to property such that the resulting damage is indistinguishable except as to the timing or sequence of the causes of the damage, then none of the loss or damage is insured by this policy.

Excluded Causes of Loss or Damage are excluded whether they are, or are the result of, natural or man-made activities, conditions or events.  Excluded Causes of Loss or Damage apply to exclude the loss or damage arising from or as a result of the excluded activity, condition or event, whether the loss or damage is direct or indirect or immediate or consequential.

**8.**  **Faulty, Inadequate, Defective or Incomplete Planning, Zoning, Maintenance, Repairs, Renovation, Manufacture or Construction.**

We do not insure loss, damage or costs which directly or indirectly are caused by, arise out of or result from, or any costs of fixing or making good, any faulty, inadequate, defective or incomplete planning, zoning, development, surveying, siting, engineering, design, specifications, workmanship, maintenance, servicing, renovation, repair, manufacture, construction, grading, compaction, excavation, or materials that is for, is used in or is part of a method or process involving any type of personal property owned or used by an **insured** or any type of real property (including land or any improvements) whether or not the real property is owned or used by an **insured**.

This exclusion applies:

a.  whether the activity is by an **insured** or by any person, group, organization, association or governmental body;

b.  whether or not an **insured** knew of or approved the activity;

c.  whether the property is on or off the **residence premises**;

d.  whether the property is insured by this policy;

e.  whether the activity involves a flawed quality of the property itself or involves a flawed process, method or procedure in producing property or which affects property;

f.  whether the activity being performed on one item of property damages another item of the same or different property in the process; or

g.  whether the activity damages one aspect or part of property and another aspect or part of the same or different property becomes flawed as a result.

However, see Section I – Extensions of Coverage, Limited Water Coverage for limited coverage for **water** damage.

[Doc. 27-1, pp. 29-30; Doc. 27-2, pp. 29-30].

12.   **Suit Against Us**

No suit or other action can be brought against us, our agents or our representatives unless these has been full compliance with all terms of this policy, including, but not limited to:

a.      submission to requested examinations under oath; or

b.      valuation of the **actual cash value** and/or the **incurred property damage** by appraisal, if the suit or action involves such.

Suit on or arising out of the Section I – Property Coverage of this policy must be brought within one year after inception of the loss or damage.  In case of burglary or theft loss, any suit must be brought within two years after the inception of the loss or damage.

[Doc. 27, pp. 4-5, ¶ 1; Doc. 38, p. 8 n.1; Doc. 27-1, p. 40; Doc. 27-2, p. 40].

Ms. Parrish filed a claim, designated claim no. 5007489105-1, under the Policy for alleged damage to her home as the result of a May 26, 2019 storm ("First Claim").  [Doc. 38-6, p. 5].  On June 20, 2019, Markus Doll, a licensed insurance adjuster, performed an inspection of Ms. Parrish's home.  Mr. Doll inspected both the interior and exterior of the home and documented his inspection through photographs of all relevant areas of reported damage or potential damage. [Doc. 27, p. 5, ¶ 5; Doc. 38, p. 8 n.1; Doc. 27-3].

Based on the inspection, FICO determined that, as a result of the May 26, 2019 storm, Ms. Parrish's property sustained wind damage to the fence, wind damage to the rear slope of the roof and ridge cap, and minor interior water damage in the living room.  [Doc. 27, pp. 5-6, ¶ 6; Doc. 38, p. 8 n.1; Doc. 27-3; Doc. 27-4].  However, Mr. Doll also found wear and tear and rot on the exterior siding of Ms. Parrish's home, which are excluded causes of loss under the Policy.  [Doc. 27, p. 6, ¶ 7; Doc. 38, p. 8 n.1; Doc. 27-3; Doc. 27-4].  The only hail damage observed by Mr. Doll during the June 20, 2019 inspection was old hail damage on a single metal exhaust cap caused by

a prior event, but no other hail damage was observed on any other metal on the roof.  [Doc. 27, p. 6, ¶ 8; Doc. 38, p. 8 n.1; Doc. 27-3, p. 15].

In a letter dated June 20, 2019 explaining FICO's coverage position ("2019 Claim Outcome Letter"), Mr. Doll cited the specific provisions of the Policy related to the exclusions for observed damage which were not covered by the Policy.  [Doc. 27, p. 6, ¶ 7; Doc. 38, p. 8 n.1; Doc. 27-4; Doc. 27-1, p. 27; Doc. 27-2, p. 27, 29-30].  Also on June 20, 2019, Mr. Doll prepared an estimate of covered damage which was included with the 2019 Claim Outcome Letter.  [Doc. 27, p. 6, ¶ 9; Doc. 38, p. 8 n.1; Doc. 27-4, pp. 5-22].  After application of the depreciation in the amount of $1,517.74 and Ms. Parrish's deductible in the amount of $1,450.00, Ms. Parrish was tendered an Actual Cash Value payment of $2,443.36 for repairing Ms. Parrish's fence, outdoor contents, replacing the lower rear slope of the roof, and painting the ceiling in the living room.  [*Id.*].  The 2019 Claim Outcome Letter explicitly stated, "[i]f you intend to recover withheld depreciation, you must submit a copy of your invoices or receipts within 365 days from the date of our first Actual Cash Value payment, or by June 20, 2020."  [Doc. 27, pp. 6-7, ¶ 10; Doc. 38, p. 8 n.1; Doc. 27-4, p. 1].

Finally, the 2019 Claim Outcome Letter also cited to the Policy's suit limitation provision informing Ms. Parrish:  "Please note there are time limits set forth in the Conditions ("Suits Against Us" or "Legal Action Against Us") section of the policy which, depending on your state, may affect the time within which you may pursue your claim.  This period may have been extended by statute or case law."  [Doc. 27, p. 6, ¶ 9; Doc. 38, p. 8 n.1; Doc. 27-4, p. 4].

Ms. Parrish did not contact FICO prior to June 2020 by the email, phone number, or address provided in the 2019 Claim Outcome Letter.  [Doc. 27, p. 7, ¶ 11; Doc. 38, p. 8 n.1; Doc. 27-6, p.

66:16-21].  Nor did Ms. Parrish provide FICO an estimate from a contractor for repairs within 365

days of the claim outcome.  [Doc. 27, p. 7, ¶ 12; Doc. 38, p. 8 n.1; Doc. 27-6, p. 65:10-22].

On July 7, 2020, Ms. Parrish wrote to FICO requesting an extension of time to start and

complete repairs.  [Doc. 27, p. 7, ¶ 12; Doc. 38, p. 8 n.1; Doc. 27-7].  On July 18, 2020, FICO

granted the extension to complete repairs to the covered loss and collect withheld depreciation,

allowing Ms. Parrish until August 20, 2020.  [Doc. 27, p. 7, ¶ 12; Doc. 38, p. 8 n.1; Doc. 27-8].

FICO's letter approving the extension to August 20, 2020, included the following:

> On July 18, 2020, we received your request for an extension of time to complete
> your repairs or replacement and recover Replacement Cost benefits under your
> policy.
>
> We have further reviewed your claim for Replacement Cost benefits.  Although
> your insurance policy does not provide coverage for Replacement Cost benefits
> beyond 365 days from the date of our first payment toward Actual Cash Value, we
> agree to extend coverage for this benefit until August 20, 2020, but this extension
> is limited to this request and this policy.  Please complete the work and send the
> invoices to our office on or before this date.
>
> By making this extension of coverage, we do not waive any of the terms, limitations
> or conditions of your insurance policy, or any rights we may have under the policy
> or under law, all of which are expressly retained and reserved.  Also, any activity
> on our part should not be construed as a waiver.

[Doc. 27, p. 7, ¶ 13; Doc. 38, p. 8 n.1; Doc. 27-8, p. 1].  Additionally, the July 18, 2020

correspondence included the following:  "Please note there are time limits set forth in the

Conditions ("Suit Against Us" or "Legal Action Against Us") section of the policy which,

depending on your state, may affect the time within which you may pursue your claim.  This period

may have been extended by statute or case law."  [Doc. 27, p. 9, ¶ 20; Doc. 38, p. 8 n.1; Doc. 27-

8, p. 1].

Ms. Parrish retained a contractor, Heartland Roof & Construction Company, who inspected

and provided an estimate in July of 2020.  The estimate of $20,769.28 was for replacement of the

entire roof rather than just the lower rear slope.  [Doc. 27, pp. 7-8, ¶ 14; Doc. 38, p. 8 n.1; Doc. 27-9].  Ms. Parrish ultimately did not engage Heartland to do the work.  [Doc. 27, pp. 7-8, ¶ 14; Doc. 38, p. 8 n.1; Doc. 27-6, p. 84:3-9].

Instead, Ms. Parrish and her roommate, David Clapp, began doing the roofing work themselves and removed the shingles on the roof of the home.  Ms. Parrish asserts that the new roof decking was installed by August 8, 2020.  [Doc. 27, p. 8, ¶ 16; Doc. 38, p. 8 n.1; Doc. 27-6, p. 143:6-15].  After they installed the roof decking, but before completing the roof upgrades by installing new shingles and synthetic overlay to the roof, they covered the roof decking with a tarp. [Doc. 27, p. 8, ¶ 16; Doc. 38, p. 8 n.1; Doc. 27-6, p. 102:15-22].

On or about the night of August 13, 2020, wind blew off the tarp and water entered the home.  [Doc. 27, p. 8, ¶ 18; Doc. 38, p. 8 n.1; Doc. 38-1, pp. 103:2-5, 126:10-24].  Ms. Parrish made a second claim, designated claim no. 3013523785-1, following the August 13, 2020 incident ("Second Claim").  [Doc. 27, p. 8, ¶ 18; Doc. 38, p. 8 n.1; Doc. 38-4].  On September 2, 2020, FICO denied the Second Claim, citing the Policy's Limited Water Coverage and Excluded Causes of Loss or Damage – 5. Faulty, Inadequate, Defective or Incomplete Planning, Zoning, Maintenance, Repairs, Renovation, Manufacture or Construction ("2020 Claim Outcome Letter"). [Doc. 27, p. 9, ¶ 19; Doc. 38, p. 10, ¶ 4; Doc. 27-11].

On August 14, 2020, FICO received proof that the repairs involving the code upgrades were completed on the lower rear roof slope.  [Doc. 27, p. 8, ¶ 17; Doc. 38, pp. 8 n.1; Doc. 27-10].  FICO issued a supplemental payment totaling $1,473.30 that same day.  [*Id.*].  The August 14, 2020 correspondence regarding the supplemental payment included the following: "Please note there are time limits set forth in the Conditions ("Suit Against Us" or "Legal Action Against Us") section of the policy which, depending on your state, may affect the time within which you may

pursue your claim.  This period may have been extended by statute or case law."  [Doc. 27, p. 9, ¶ 20; Doc. 38, p. 8 n.1; Doc. 27-10, p. 2].  Additionally, it stated, "[w]e reserve all rights and defenses under the policy and law and no activity on our part should be construed as a waiver."  [Doc. 27-10, p. 1].  Receiving the supplemental payment earlier would not have caused Ms. Parrish to contact a roofing contractor between July of 2019 and March of 2020.  [Doc. 27, p. 8, ¶ 17; Doc. 38, pp. 8 n.1; Doc. 27-6, p. 182:1-6].

On May 24, 2021, Ms. Parrish filed this lawsuit against FICO alleging breach of contract and breach of the implied duty of good faith and fair dealing related to the two separate insurance claims.[2]  [Doc. 27, p. 5, ¶ 2; Doc. 38, p. 8 n.1; Doc. 2-1].  Specifically, the Complaint includes the following causes of action:  (1) breach of contract related to the claim for damage from the May 26, 2019 storm; (2) breach of contract related to the claim for damage from the August 13, 2020 storm; and (3) breach of the obligation of good faith and fair dealing, commonly referred to as "bad faith."  Ms. Parrish seeks relief including punitive damages and a declaratory judgment that FICO owes Ms. Parrish coverage under the Policy.  [Doc. 2-1].

## II.    Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict

---

[2] Ms. Parrish filed her lawsuit in the District Court in and for Creek County, State of Oklahoma, and FICO removed the case to this court on July 12, 2021.  For consistency with the Federal Rules of Civil Procedure, the court refers to the Petition filed in Creek County as the "Complaint."

for the nonmoving party." *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Further, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). However, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

A court must examine the factual record in the light most favorable to the party opposing summary judgment. *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(c)).

### III.   Issues Related to Hail Damage

Prior to considering the merits of FICO's motion for summary judgment, it is first helpful to consider Ms. Parrish's claims insofar as they are premised on alleged hail damage. In the Complaint's first cause of action, Ms. Parrish alleges that FICO breached the insurance contract by failing to compensate Ms. Parrish for all the damage arising from the May 26, 2019 storm, "which included the hail damage that was missed by adjuster/claims appraiser Markus Doll in his damage report of June 20, 2019." [Doc. 2, p. 10, ¶ 80]. Ms. Parrish's second cause of action— breach of contract related to the August 13, 2020 storm damage—includes no reference to hail damage. [*Id.* at pp. 11-12, ¶¶ 83-92]. Thus, Ms. Parrish initially included the alleged hail damage in her causes of action related to the First Claim.

However, Ms. Parrish now takes the position that the hail damage "ultimately became part of Plaintiff's **second** claim with FICO."  [Doc. 40, p. 18]; *see also* [Doc. 38, pp. 13-15].  Further, the undisputed evidence demonstrates that the only hail damage observed by Mr. Doll during the June 20, 2019 inspection was old hail damage on a single metal exhaust cap caused by a prior event, and no other hail damage was observed on any other metal on the roof.  [Doc. 27, p. 6, ¶ 8; Doc. 38, p. 8 n.1; Doc. 27-3, p. 15].  Ms. Parrish offers no evidence that any additional hail damage existed at the time of the June 20, 2019 inspection.[3]  Thus, no genuine dispute of material fact exists as to whether the alleged hail damage occurred as a result of the May 26, 2019 storm.

It well-established that, "[a]s a general rule, a plaintiff should not be prevented from pursuing a valid claim just because she did not set forth in the complaint a theory on which she could recover, 'provided always that a late shift in the thrust of the case will not prejudice the other party in maintaining [its] defense upon the merits.'"  *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090-91 (10th Cir. 1991) (quoting 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1219, at 194 (1990)).  This is because "[t]he purpose of 'fact pleading,' as provided by Fed. R. Civ. P. 8(a)(2), is to give the defendant fair notice of the claims against [it] without requiring the plaintiff to have every legal theory or fact developed in detail before the complaint is filed and the parties have opportunity for discovery."  *Evans,* 936 F.2d at 1091.

---

[3] Ms. Parrish's own statements regarding when the alleged hail damage occurred are insufficient to create a genuine dispute of material fact, as Ms. Parrish herself has been inconsistent as to the date of the alleged damage.  *Compare* [Doc. 38-3, p. 2] *with* [Doc. 38-1, p. 181:10-13].

Here, FICO has not objected to Ms. Parrish's shift in characterizing the hail damage as part of the Second Claim, rather than the First Claim.[4]  Nor has FICO been prejudiced by the change. FICO has been on notice since the filing of this lawsuit that Ms. Parrish contends FICO breached the Policy by failing to provide coverage for the alleged hail damage.  Thus, FICO was aware of the need to defend against same.  Further, FICO addressed Ms. Parrish's contention that the hail damage was part of the Second Claim in its reply brief and therefore was not prevented from maintaining a defense to the position.  [Doc. 42].  The court therefore considers Ms. Parrish's argument and evidence regarding the hail damage as being directed to her second cause of action— breach of contract related to the August 13, 2020 storm—and her third cause of action (bad faith) insofar as it is premised on the Second Claim.

## IV.  Analysis

FICO seeks summary judgment as to Ms. Parrish's breach of contract and bad faith claims related to the First Claim.  [Doc. 27].  Separately, FICO seeks summary judgment as to Ms. Parrish's breach of contract and bad faith claims related to the Second Claim.  Finally, FICO asserts that "[t]here is no evidence to support [Ms. Parrish's] request for punitive damages and declaratory relief related to the insurance claims" and therefore summary judgment is appropriate.  [Doc. 27, p. 21].

### A.    *First Claim*

FICO seeks summary judgment as to Ms. Parrish's claims arising from the First Claim— that related to the May 26, 2019 storm.  The court first considers breach of contract.

---

[4] If fact, FICO's Amended First Motion *in Limine* includes a topic seeking to preclude the parties from offering any evidence, testimony, or argument concerning Ms. Parrish's allegation that the hail damage occurred at the same time as the May 26, 2019 tornado.  [Doc. 33, p. 12].

1.      Breach of Contract

FICO contends that Ms. Parrish's breach of contract cause of action related to her First Claim is barred by the Policy's suit limitation provision.  It is undisputed that the Policy included the following provision, titled "Suit Against Us":  "Suits on or arising out of the Section I – Property Coverage of this policy must be brought within one year after inception of the loss or damage."  Ms. Parrish does not challenge the enforceability of the limitation provision nor does she argue that it is ambiguous.  *See generally* [Doc. 38, pp. 14-15].  And, regardless, courts interpreting Oklahoma law have consistently concluded that similar limitation provisions are unambiguous and enforceable as to breach of contract claims.[5]  *See Clipperton v. Allstate Ins. Co.,* 151 F. App'x 652, 654-55 (10th Cir. 2005)[6]; *Hayes v. State Farm Fire & Cas. Co.*, 855 F. Supp. 2d 1291, 1300 (W.D. Okla. 2012); *Walton v. Colonial Penn Ins. Co.*, 860 P.2d 222 (Okla. 1993).

It is undisputed that Ms. Parrish did not file this lawsuit until May 24, 2021, nearly two years after the May 26, 2019 date of loss for the First Claim.  Thus, the Policy's "Suit Against Us" provision appears applicable to bar Ms. Parrish's first breach of contract cause of action.

However, in response, Ms. Parrish argues that the cause of action is not barred because a genuine dispute of material fact exists as to whether FICO waived the limitation period.  [Doc. 38, p. 15].  Specifically, Ms. Parrish points to evidence that FICO granted her an extension of time to complete the repairs, FICO's "own documents conceded" that issues existed as the handling of the First Claim, and that FICO did not issue the final, supplemental payment until August 14, 2020.

---

[5] The parties have stipulated that Oklahoma substantive law applies to this action.  [Doc. 15, p. 2].

[6] "Unpublished decisions are not precedential, but may be cited for their persuasive value."  10th Cir. R. 32.1(A).

The Oklahoma Supreme Court has held that an insurer "waived the limitation provision when it did not deny liability within time to enable the plaintiff to institute [an] action within the limitation provision contained in the policy." *Prudential Fire Ins. Co. v. Trave-Taylor, Co.*, 152 P.2d 273, 275 (Okla. 1944). In that case, the insurer did not complete its investigation of the loss until a few weeks prior to the expiration of the suit limitation provision, and the denial was not communicated to the plaintiff until after the contractual limitation period had expired. *Id.* at 274. The "plaintiff instituted the action shortly thereafter." *Id.* Likewise, in *Agricultural Insurance Company of Watertown v. Iglehart*, the Oklahoma Supreme Court concluded that an insurer waived the limitation provision where the insurer "at no time denied liability to plaintiff" but, instead, "[t]here was merely a continuing disagreement between the parties as to the amount of plaintiff's claim." 386 P.2d 145, 146 (Okla. 1963). The court reasoned, "[i]f [the insurer] had intended to rely on the limitation provision, it should have paid plaintiff what it considered to be the reasonable value of plaintiff's loss and denied liability for anything in excess of that." *Id.* Thus, it is clear that, to determine waiver, the court must focus on the *insurer's conduct* and whether it prohibited the insured from filing suit within the contractual limitation period. *See Ins. Co. of N. Am. v. Bd. of Educ. of Indep. Sch. Dist. No. 12*, 196 F.2d 901, 904 (10th Cir. 1952).

Here, it is undisputed that Mr. Doll inspected Ms. Parrish's home on June 20, 2019 and prepared an estimate. That same day, FICO issued the 2019 Claim Outcome Letter explaining FICO's coverage position and setting forth Ms. Parrish's responsibilities should she wish to recover withheld depreciation. FICO tendered an Actual Cash Value payment of $2,443.36 for repairs to Ms. Parrish's fence, outdoor contents, replacing the lower rear slope of the roof, and painting the ceiling in the living room. It is also undisputed that Ms. Parrish did not contact FICO prior to June 2020 by the email, phone number, or address provided in the 2019 Claim Outcome

- 14 -

Letter.  Nor did Ms. Parrish provide FICO an estimate from a contractor for repairs within 365 days of the claim outcome.  In fact, it was not until July 7, 2020—over one month after the expiration of the "Suit Against Us" provision—that Ms. Parrish wrote to FICO to request an extension of time to complete repairs.

Ms. Parrish offers no evidence of FICO's conduct during the period from the June 20, 2019 payment to expiration of the "Suit Against Us" provision so as to demonstrate a genuine dispute of material fact as to whether *FICO's conduct* prohibited her from filing suit within the one-year limitation period.  Rather, the undisputed facts demonstrate that any delay was attributable to Ms. Parrish and FICO had paid Ms. Parrish "what it considered to be the reasonable value of [her] loss and denied liability for anything in excess of that." *Iglehart*, 386 P.2d at 146.  Thus, *Trave-Taylor Co.* and its progeny are distinguishable.

Insofar as Ms. Parrish directs the court to FICO's July 18, 2020 extension of time to repair and the August 14, 2020 supplemental payment, Ms. Parrish provides no case law applying waiver based solely on the insurer's conduct *after* expiration of the contractual limitation of suit provision. Ms. Parrish cites the decision of U.S. District Judge for the Western District of Oklahoma Timothy D. DeGiusti in *ROC ASAP, L.L.C. v. Starnet Ins. Co.*, No. CIV-12-461-D, 2014 WL 667833 (W.D. Okla. Feb. 20, 2014).  However, in that case, the plaintiff presented evidence that "just weeks before the expiration of the limitations period [the insurer] issued a report stating that it was 'continuing to investigate' the claim" and "during that same time frame, [insured] hired a new appraiser as part of its investigation of the claim." *Id.* at *7.  Here, plaintiff offers no evidence that, prior to the expiration of the one-year limitation period, FICO represented it was continuing to investigate the claim or took any action in furtherance of that investigation.  Rather, the 2019 Claim Outcome Letter specifically states:  "We've completed the adjustment of your loss and we

- 15 -

are closing your claim." [Doc. 27-4, p. 4].[7]  Further, it is undisputed that, in both the July 18, 2020 letter granting Ms. Parrish an extension of time to repair and the August 14, 2020 letter regarding the supplemental payment, FICO explicitly stated that nothing therein should be construed as a waiver of any of its rights under the Policy.  Further, both letters specifically directed Ms. Parrish to the "Suit Against Us" provision.  Under the circumstances, Ms. Parrish has failed to show a genuine dispute of material fact exists as to whether FICO's conduct post-expiration of the contractual limitation period results in a waiver of the "Suit Against Us" provision under Oklahoma law.  Thus, Ms. Parrish's breach of contract claim related to the First Claim is barred by the Policy's "Suit Against Us" provision and FICO is entitled to summary judgment as to Ms. Parrish's first cause of action.

FICO is entitled to summary judgment as to Ms. Parrish's breach of contract claim related to the First Claim for the additional reason that Ms. Parrish offers no evidence that FICO failed to pay any monies owed under the Policy for the First Claim.

In Oklahoma, general principles of contractual interpretation govern the construction of an insurance policy.  *Dodson v. St. Paul Ins. Co*., 812 P.2d 372, 376 (Okla. 1991).  Under Oklahoma law, the elements of a breach of contract claim are: "(1) the formation of a contract, (2) breach of the contract, and (3) damages as a result of that breach."  *Cates v. Integris Health, Inc*., 412 P.3d 98, 103 (Okla. 2018).

As previously stated, the undisputed facts demonstrate that, on June 20, 2019, FICO issued an ACV payment totaling $2,443.36 for the covered wind damage to Ms. Parrish's fence, outdoor

---

[7] Although FICO did not specifically direct the court to this statement in the 2019 Claim Outcome Letter, under Federal Rule of Civil Procedure 56, the court may consider materials not specifically cited, although it need not do so.  *See* Fed. R. Civ. P. 56(c)(3).

contents, rear slope of the roof and ridge cap, as well as the interior water damage in the living room.  No other covered damages were identified.  Additionally, on August 14, 2020, FICO issued a supplemental payment of $1,473.30 following receipt of proof that repairs involving code upgrades were completed on the lower rear roof slope.  Ms. Parrish offers no evidence of the existence of damages resulting from the May 26, 2019 storm that were covered under the Policy but were not paid.  Thus, FICO is entitled to summary judgment as to Ms. Parrish's first cause of action—breach of contract as to the First Claim—for this additional reason.[8]

> ### 2.    Bad Faith

FICO argues that Ms. Parrish's bad faith claim insofar as it is premised on the First Claim is also barred by the "Suit Against Us" provision because it "arises out of the" Policy's property coverage.  [Doc. 27, p. 11].  This issue is inadequately briefed.  The parties cite no case law interpreting a suit limitation provision that includes suits "arising out of" the Policy's property coverage, nor has the court identified any.  Further, the court questions FICO's position in light of well-established Oklahoma law that "[a]lthough torts may be committed by parties to a contract, a tort is a violation of a duty imposed by law independent of contract.  If the contract is merely the inducement which creates the occasion for the tort, the tort, not the contract, is the basis of the action." *Lewis v. Farmers Ins. Co., Inc.*, 681 P.2d 67, 69 (Okla. 1983).  Thus, Oklahoma courts have permitted plaintiffs to pursue a bad faith claim even though a breach of contract theory is time barred. *See Hayes,* 855 F. Supp. 2d at 1301; *Roemer v. State Farm Fire & Cas. Co*., No. 06-CV-0663-CVE-PJC, 2007 WL 527863, at *5 (N.D. Okla. Feb. 14, 2007).  Regardless, the court

---

[8] For the same reasons, Ms. Parrish is not entitled to a declaration that FICO owes a duty of coverage under the Policy for any additional damage insofar as her request is premised on the First Claim.

need not decide whether the "Suit Against Us" provision applies to Ms. Parrish's bad faith theory premised on the First Claim because no genuine dispute of material fact exists as to the reasonableness of FICO's conduct.

Under Oklahoma law, "an insurer has an implied duty to deal fairly and act in good faith with its insured and . . . the violation of this duty gives rise to an action in tort." *Christian v. Am. Home Assurance Co.,* 577 P.2d 899, 904 (Okla. 1977).  The essential elements of a bad faith claim are as follows:  "(1) claimant was entitled to coverage under the insurance policy at issue; (2) the insurer had no reasonable basis for delaying payment; (3) the insurer did not deal fairly and in good faith with the claimant; and (4) the insurer's violation of its duty of good faith and fair dealing was the direct cause of the claimant's injury." *Ball v. Wilshire Ins. Co.*, 221 P.3d 717, 724 (Okla. 2009).  Tort liability requires more than mere negligence.  *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1094 (Okla. 2005).

"The mere allegation that an insurer breached the duty of good faith and fair dealing does not automatically entitle a litigant to submit the issue to a jury for determination." *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436 (10th Cir. 1993).  "Until the facts, when construed most favorably against the insurer, have established what might reasonably be perceived as tortious conduct on the part of the insurer, the legal gate to submission of the issue to the jury remains closed." *Id.* at 1437; *see also Garnett v. Gov't Emps. Ins. Co.,* 186 P.3d 935, 944 (Okla. 2008) ("Before the issue of an insurer's alleged bad faith may be submitted to the jury, the trial court must first determine as a matter of law, under the facts most favorably construed against the insurer, whether the insurer's conduct may be reasonably perceived as tortious.").

As discussed above, it is undisputed that, on June 20, 2019, within one month of the date of loss, Mr. Doll inspected Ms. Parrish's property and prepared an estimate of covered damage.

That same day, FICO tendered an Actual Cash Value payment of $2,443.36 for repairing Ms. Parrish's fence, outdoor contents, replacing the lower rear slope of the roof, and painting the ceiling in the living room, all of which were covered under the Policy. Additionally, FICO issued the 2019 Claim Outcome Letter explaining the identified damage that was not covered under the Policy.

Ms. Parrish directs the court to internal FICO emails suggesting that Mr. Doll "miss[ed] an opportunity" to include the decking replacement in the estimate based on necessary code upgrades and, further, requested unnecessary documentation from Ms. Parrish. *See* [Doc. 36-2, p. 3]. However, "a concession such as . . . that 'mistakes were made,' or words to that effect, does not, in and of itself, show bad faith." *Errahmouni v. Progressive N. Ins. Co*., No. CIV-12-1380-HE, 2013 WL 6410985, at *4 (W.D. Okla. Dec. 9, 2013). Under Oklahoma law, "[i]nsurers are free to make legitimate business decisions (and mistakes) regarding payment, as long as they act reasonably and deal fairly and in good faith with their insureds." *Bailey v. Farmers Ins. Co*., 137 P.3d 1260, 1264 (Okla. Civ. App. 2006); *see also Beers v. Hillory*, 241 P.3d 285, 292 (Okla. Civ. App. 2010).

Further, the evidence submitted by Ms. Parrish is insufficient to create a genuine dispute of material fact as to whether FICO failed to include the decking replacement in its initial estimate due to an inadequate investigation or that a more thorough investigation would have produced relevant information. *See Oulds*, 6 F.3d at 1442 ("No showing was made in this case that [insurer] overlooked material facts due to an inadequate investigation or that a more thorough investigation would have resolved the discrepancy in statements."). On the contrary, the undisputed facts demonstrate that the photos taken by Mr. Doll showed the decking boards. And FICO's prompt supplemental payment following receipt of proof of repairs involving the code upgrades is

inconsistent with any inference that the failure to include the decking in the initial estimate was anything other than mistake or negligence. Neither a mistake nor negligence is sufficient for bad faith. *Badillo,* 121 P.3d at 1094; *Bailey*, 137 P.3d at 1264. Likewise, given that a new adjuster, not Mr. Doll, handled the supplemental payment issue, no reasonable juror could conclude that the request for additional photos was unreasonable, particularly as the Policy required proof of repair in advance of payment. *See Lewis v. State Farm Fire & Cas. Co*., No. CIV-20-0648-HE, 2021 WL 8531658, at *2 (W.D. Okla. Oct. 4, 2021). For these reasons, no genuine dispute of material fact exists as to the reasonableness of FICO's handling of the First Claim and FICO is entitled to summary judgment in its favor as to Ms. Parrish's bad faith claim insofar as it is premised on the First Claim.

### 3.   Punitive Damages

In light of this court's grant of summary judgment in favor of FICO on the bad faith claim related to the First Claim, there is no tort upon which to base a punitive damage award and, therefore, FICO is entitled to judgment as a matter of law on Ms. Parrish's request for punitive damages insofar as it is premised on Ms. Parrish's First Claim. *Manis v. Hartford Fire Ins. Co.,* 681 P.2d 760, 762 (Okla. 1984). *See also* Okla. Stat. tit. 23, § 9.1.

### B.   *Second Claim*

FICO also seeks summary judgment as to Ms. Parrish's causes of action and requests for relief to the extent premised on the Second Claim. The court first considers Ms. Parrish's second cause of action—breach of contract based upon the Second Claim.

### 1.   Breach of Contract

As stated above, general principles of contractual interpretation govern the construction of an insurance policy under Oklahoma law. *Dodson*, 812 P.2d at 376. The insured bears the initial

burden of "showing that a covered loss has occurred." *Pitman v. Blue Cross & Blue Shield of Okla.*, 217 F.3d 1291, 1298 (10th Cir. 2000).  Once the insured has done so, "the insurer has the burden of showing that a loss falls within an exclusionary clause of the policy." *Id.*

Ms. Parrish submits evidence that she provided documentation of hail damage to FICO [Doc. 38-3] and included hail damage in the Second Claim.  [Doc. 38-4].  FICO has not paid the hail damage claim.  Nor is there any evidence from which a reasonable juror could conclude that FICO properly denied coverage for the hail damage as the 2020 Claim Outcome Letter includes no reference to the hail damage.  [Doc. 27-11].

With respect to the interior water damage aspect of the Second Claim, FICO argues that the Policy does not provide coverage because the Limited Water Coverage applies only if the "hail, rain, snow or sleet enter[ed] through an opening in the roof or wall of a **building structure**, and only if the opening is first caused by damage from the direct force of . . . windstorm [or] hailstorm." [Doc. 27-2, p. 20].  FICO asserts that the water entered the home, not through a storm-created opening, but rather because Ms. Parrish removed the shingles and covered the roof with a tarp. [Doc. 27, pp. 19-20; Doc. 42, pp. 1-2].  And FICO contends that a tarp is not a roof structure covered under the Policy.  [Doc. 42, p. 2].  However, it appears that, under the Policy, in some circumstances, a tarp can qualify as roof or wall as defined by the Policy.  [Doc. 27-2, p. 11].  The parties have not addressed this provision in the summary judgment briefing.  Further, it is undisputed that a windstorm caused the tarp to tear away.  Thus, a genuine dispute of material fact exists as to application of the Policy's Limited Water Coverage.

With respect to the interior water damage aspect of the Second Claim, FICO asserts that it properly denied coverage because the Policy's "Exclusion 5. – Faulty, Inadequate, Defective or Incomplete Planning, Zoning, Maintenance, Repairs, Renovation, Manufacture or Construction."

However, FICO directs the court to no evidence that Ms. Parrish's work was faulty,[9] and it is FICO's burden to show that the loss falls within the exclusion.  *See Pitman,* 217 F.3d at 1298. Further, Ms. Parrish offers evidence in the form of her testimony that the work was not faulty.[10] [Doc. 38-1, pp. 98:3-11, 102:11-22, 103:5-14, 126:10-24].  Accordingly, viewing the evidence in the light most favorable to Ms. Parrish, a genuine dispute of material fact exists as to whether the Policy's faulty workmanship exclusion applies to preclude coverage.

Based on the evidence and argument presented in the summary judgment briefing, genuine disputes of fact exist to issues that are material to Ms. Parrish's breach of contract claim premised on the Second Claim.  Thus, FICO is not entitled to summary judgment on Ms. Parrish's second cause of action—breach of contract related to the Second Claim.

      2.   <u>Bad Faith</u>

The Oklahoma Supreme Court has stated "a claim must be paid promptly unless the insurer has a reasonable belief that the claim is legally or factually insufficient.  The decisive question is whether the insurer had a 'good faith belief, *at the time its performance was requested*, that it had justifiable reason for withholding payment under the policy.'"  *Buzzard v. Farmers Ins. Co*., 824 P.2d 1105, 1109 (Okla. 1991) (emphasis in original) (quoting *Buzzard v. McDanel*, 736 P.2d 157, 159 (Okla. 1987)).  Thus, "[a] central issue in any analysis to determine whether breach has occurred is gauging whether the insurer had a good faith belief in some justifiable reason for the actions it took or omitted to take that are claimed violative of the duty of good faith and fair

---

[9] In the motion, FICO cites only its 2020 Claim Outcome Letter.  *See* [Doc. 27, p. 9, ¶ 19; Doc. 27-11].  Although the letter is evidence that FICO denied coverage based on the faulty workmanship exclusion, it is not evidence that the work itself was faulty.

[10] FICO suggests that expert testimony is required to create a fact issue as to the quality of the workmanship.  [Doc. 42, pp. 1-2].  However, FICO offers no case law in support of its position.

dealing." *Badillo*, 121 P.3d at 1093-94. "[B]ad faith cannot exist if an insurer's conduct was reasonable under the circumstances." *Barnes v. Okla. Farm Bureau Mut. Ins. Co.*, 11 P.3d 162, 170-71 (Okla. 2000); *see also Shotts v. GEICO Gen. Ins. Co.*, 943 F.3d 1304, 1314 (10th Cir. 2019) ("To succeed on a bad faith claim, 'the insured must present evidence from which a reasonable jury could conclude that the insurer did not have a reasonable good faith belief for withholding payment of the insured's claim.'"). The insurer's conduct must be assessed based on the facts known and knowable to the insurer concerning the claim at the time the insurer's performance was requested. *McDanel*, 736 P.2d at 159; *see also Oulds*, 6 F.3d at 1439.

FICO argues that the existence of a legitimate dispute as to Ms. Parrish's Second Claim precludes bad faith liability. Under Oklahoma law, "[a] [bad faith] cause of action will not lie where there is a legitimate dispute." *Newport v. USAA*, 11 P.3d 190, 195 (Okla. 2000) (quoting *Manis*, 681 P.2d at 762).

However, the Tenth Circuit, applying Oklahoma law, has recognized that "a legitimate dispute as to coverage will not act as an impenetrable shield against a valid claim of bad faith." *Timberlake Constr. Co. v. U.S. Fid. & Guar. Co.*, 71 F.3d 335, 343 (10th Cir. 1995). Rather, even where a legitimate dispute exists, a jury must still determine the existence of bad faith when the insured "produce[s] additional evidence of bad faith." *Bannister v. State Farm Mut. Auto. Ins. Co.*, 692 F.3d 1117, 1128 (10th Cir. 2012) (quoting *Timberlake*, 71 F.3d at 344); *see also Shotts*, 943 F.3d at 1315. The Tenth Circuit has recognized that the additional evidence may take several forms, including "evidence that the insurer did not *actually* rely on th[e] legitimate [dispute] to deny coverage, denied the claim for an illegitimate reason, or otherwise failed to treat the insured fairly." *Shotts*, 943 F.3d at 1315 (internal quotations and citations omitted) (emphasis in original). Additional evidence of bad faith may also include evidence "that the insurer performed an

inadequate investigation of the claim." *See Shotts*, 943 F.3d at 1315; *Bannister,* 692 F.3d at 1128 (quoting *Timberlake Constr. Co*., 71 F.3d at 345) ("Another instance in which the jury may decide the issue is if there is evidence that the insurer 'failed to adequately investigate [the] claim.'").

Ms. Parrish provides evidence that she submitted documentation of hail damage to FICO in August of 2020.  [Doc. 38-3, p. 1].  However, the 2020 Claim Outcome Letter includes no reference to hail damage and offers no evidence that FICO had a good faith belief in a justifiable reason for its denial of the claim.  *See Badillo*, 121 P.3d at 1093-94.  Further, with regard to the interior water damage, based on the evidence submitted, it appears that FICO relied solely on Ms. Parrish's statement that she and her roommate had removed the shingles, rather than hiring a general contractor.  *See* [Doc. 38-7].  There is no evidence of any further investigation.  And, as discussed above, a genuine dispute of material fact exists as to whether the Second Claim was covered under the Policy.   The court concludes that the "minimal amount of investigation undertaken by defendant calls into question whether defendant had a good faith or justifiable reason to deny plaintiff's insurance claim."  *Ozment v. Am. Cas. Prop. & Cas. Co.,* No. 12-CV-0649-CVE-TLW, 2013 WL 3179522, at *5 (N.D. Okla. June 21, 2013); *see also Alsobrook v. Nat'l Travelers Life Ins. Co.,* 852 P.2d 768 (Okla. Civ. App. 1992).

### 3.    Punitive Damages

FICO next seeks summary judgment as to Ms. Parrish's request for punitive damages to extent premised on the Second Claim.  FICO argues that Ms. Parrish cannot establish that FICO recklessly disregarded its duty of good faith and fair dealing.

Under Oklahoma law, an award of punitive damages is appropriate where the jury finds by clear and convincing evidence that "[a]n insurer has recklessly disregarded its duty to deal fairly and act in good faith with its insured" or "intentionally and with malice breached its duty to deal

- 24 -

fairly and act in good faith with its insured." Okla. Stat. tit. 23, § 9.1(B)(2), (C)(2).[11]  If the jury

finds that the insurer acted with "reckless disregard," the jury, in a separate proceeding conducted

after the jury has made such finding and awarded actual damages, may award damages in an

amount not to exceed the greater of:  (a) one hundred thousand dollars ($100,000.00), or (b) the

amount of the actual damages awarded.  Okla. Stat. tit. 23, § 9.1(B)(2).  Alternatively, if the jury

finds that the insurer acted intentionally and with malice, the jury, in a separate proceeding after

the award of actual damages, the jury may award punitive damages in an amount not to exceed the

greatest of:  (a) five hundred thousand dollars ($500,000.00), (b) twice the amount of actual

damages awarded, or (c) the increased financial benefit derived by the insurer as a direct result of

the conduct causing the injury to the plaintiff and other persons or entities.  Okla. Stat. tit. 23, §

9.1(C)(2).  However, as recognized by the Oklahoma Supreme Court

> Although the current punitive damage statute contains language specifically
> referencing insurers when they are sued for breach of the duty of good faith and fair
> dealing, our recognition in *Buzzard* that such an award is not automatic and is
> governed by the standard applicable in other tort cases still stands and nothing in §
> 9.1 has altered this principle.

*Badillo,* 121 P.3d at 1106.  Thus, for punitive damages to be allowed there must be evidence, at a

minimum, from which a reasonable juror could conclude that

> [Defendant] was either aware, or did not care, that there was a substantial and
> unnecessary risk that [its] conduct would cause serious injury to others.  In order
> for the conduct to be in reckless disregard of another's rights, it must have been
> unreasonable under the circumstances, and also there must have been a high
> probability that the conduct would cause serious harm to another person.

Okla. Unif. Jury Instruction 5.6

---

[11] Ms. Parrish does not argue that FICO "engaged in conduct life-threatening to humans."  *See* Okla. Stat. tit. 23, § 9.1(D)(2).

Viewing the summary judgment evidence in the light most favorable to Ms. Parrish and drawing all reasonable inferences in her favor, a genuine issue of fact exists as to whether FICO, at a minimum, recklessly disregarded its duty of good faith and fair dealing with respect to its obligation to conduct a reasonable investigation and make timely payment of Ms. Parrish's Second Claim. Summary adjudication of the punitive damages issue, insofar as it is premised on the Second Claim, is therefore not warranted at this time.

## V.    Conclusion

WHEREFORE, the Motion for Summary Judgment [Doc. 27] of defendant Farmers Insurance Company, Inc. is granted in part and denied in part. The motion is granted as to Ms. Parrish's first cause of action (breach of contract related to the May 26, 2019 storm), her bad faith claim insofar as it is premised on the First Claim, her request for punitive damages to the extent premised on the First Claim, and any declaratory relief to the extent premised on the First Claim. The motion is otherwise denied.

DATED this 5th day of August, 2022.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE